UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SYED B. SHAH, )<br>)<br>    *Plaintiff*, )<br>)<br>    v. )<br>)<br>BROADCASTING BOARD OF )<br>GOVERNORS, )<br>)<br>    *Defendant*. ) | Civil Action 18-1328-RDM |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

Plaintiff has brought claims against Broadcasting Board of Governors for declaratory, compensatory monetary damages and equitable relief, for Defendant's retaliation and discrimination against plaintiff in violation of Title VII, and Age Discrimination in Employment Act, retaliation and constructive discharge.

The management states that they were looking to implement and enforce what they call the "new format" since on or about 2010. This policy targeted the senior staff by retaliating against them, and Mr. Shah in particular with a range of adverse actions including changing his job description without any notice, failing to benchmark him to GS13, when he clearly qualified, and manipulating his schedule isolate him, and making derogatory remarks, related to old age, about his hand tremor.

**FACTUAL BACKGROUND**

Mr. Shah has been with the VOA Pashto service since it started in early 1980s. He has

1

been targeted based on his age, his schedule has been altered to isolate him to work by himself, in an effort to force him to leave his position.  His health deteriorated to the point of complete breakdown.  He sough help and brought a claim in 2014 against his employer, however his claim was dismissed due to a technicality, whereby this court did not rule in his favor in equity and law, for having missed the 45 day cut off to file the EEO complaint.

    Management had decided to get rid of him since 2006, again in 2010 when the new format came into existence and fully implemented.  This court must not dismiss Shah's claim.  Management has implemented a change in policy called the New Format since 2006, which directly excludes senior staff and favors junior staff.  This policy has been the basis by which management has targeted, reduced and marginalized the work of senior staff, forcing them to retire or to force them into positions that are marginal and in retaliation for complaining, plaintiff was once again forced to production while all the best shows went to the younger staff.

    Management has called this "new format" a form of "face lift."  Ms. Beth Mendelson who was the Chief of the Afghan Services and who was involved with setting up and creating the new format states that the new format was a "facelift" for the agency, getting rid of the old, she states this on page 31 of her deposition (excerpts are also attached, Exhibit 2).

> A.  We were, those are the kinds of things we were considering. You know, we were trying to look at different things that we were going to be doing. I don't think we ultimately did that because we thought local news did that. But I was giving you an example. We were looking at everything. But I think we kept the basic format of, we kept the basic format of the radio and tightened it up. And I think we tried to make it a little bit more fast paced to energize the pacing of the -- you know, in

television and radio a lot of it is about the pacing
and the rhythm of shows. And the music, you know,
changing music and giving it, for lack of a better
word, a **facelift**.

Q Okay. And when you were energizing or –
A Facelifting?
Q Facelifting, you said the basic format was
the same?
A In many ways, yeah, in many ways.
Page 31
Q Okay. And when you say the programming
office wanted to revamp the Dari and Pashto Service,
to, and part of that revamping was to, and I didn't
understand, introduce new shows?
A New formats, new formats which would be
new shows. A whole, a whole restructuring of the
radio as it existed, which I don't believe they had
done in almost 20 years.
Page 17
Q So is it something nebulous that has to do
with –
A No.
Q So, okay.
A So the nexus of that was that the head of
programming, who at the time was John Lennon, had a
meeting with my then boss, Spozhmai Maiwandi, and
myself to talk about based on the, on the research
they had gotten they wanted to *really energize radio
in a different way*. They wanted to reformat. They
wanted to be, as they said, more competitive in the
marketplace. Television had started a couple years
prior. The Web was starting in Afghanistan. The
media landscape was changing from 2006, was changing
a great deal in Afghanistan, so they wanted radio to
change as well.

Plaintiff filed an original complaint with his colleagues.  Achagzai v. Broadcasting Bd.

Of Governors, 170 F.Supp.3d 164, 169 (D.D.C.2016).  The case was not heard on the merits.

## ARGUMENT

### I. Standards of Review

#### a. Standard of Review for Motion to Dismiss

In ruling on a motion to dismiss, courts must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 109 (1979); *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Conley v. Gibson*, 355 U.S. 41, 48 (1957); *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996); *United States v. BCCI Holdings* (Luxemberg), S.A., 3 F. Supp. 2d 31, 35 (D.D.C. 1998). The allegations of the complaint should be construed broadly and liberally in the plaintiffs' favor. Wright & Miller, Federal Practice & Procedure §1350, p. 551; see also *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). It is well-established that a complaint should not be dismissed for failure to state a claim unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," especially when ruling on a motion to dismiss a civil rights action under Rule 12(b)(6). *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Conley,* 355 U.S. at 46. See also *Kennada v. United States*, 880 F.2d 1439, 1442 (D. D.C. 1989). As the Court in *Sisters of Prov. of St. Mary of Woods v. City of Evanston*, 335 F. Supp. 396, 399 (N.D. Ill. 1971), another case alleging violations of the Fair Housing Act, stated:

> It is especially in civil rights disputes that we ought to be wary of disposing of the case on pre-trial motions and courts do in fact have a predilection for allowing civil rights cases to proceed until a comprehensive record is available to either support or negate the facts alleged.

See also *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).

**II.     Plaintiff's claims under ADEA and Retaliation must not be dismissed.**

As a general rule, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681, 386 U.S. App. D.C. 144 (D.C. Cir. 2009). Here, plaintiff states in his complaint that he suffered long term of discrimination especially while the new format was implemented. The last act necessary to file his Equal Employment Opportunity ("EEO") claim occurred on May 9, 2016. He filed his complaint with the EEO on May 18, 2016. This specific allegation is part of the long standing discrimination, that has been on-going since plaintiff's first complaint with this court. Achagzai v. Broadcasting Bd. Of Governors, 170 F. Supp. 3d 164 (D.D.C. 2016). In Achagzai, this court decided that since the EEO complaint was filed out of time, the Plaintiff was dismissed. However, the facts and merits of the claims brought by plaintiff were not weighed or judged by the court.

However, after plaintiff had suffered through the cost and aggravation of his original claims under Achagzai, he was once again targeted by his managers and once again his scheduled was changed and he was assigned to work alone as a form of punishment in the schedule of February 23, 2017. He was forced to work the evening shift, alone and without anyone helping him. This increased his anxiety to a level that he became an insomniac, which also made he suffer high blood pressure, where he now has to take his blood pressure three times a day, for monitoring. His mobility has been impacted, his voice has been impacted, everyone in his place of employment realized his hardship.

      Not only was the isolation detrimental to his health, but when he arrived at work, he was placed to work alone.  This change in plaintiff's schedule and the previous changes to plaintiff's schedules is a **material fact** upon which the outcome of a legal case may rely, and which must be decided by a jury.  He was also not benchmarked, while has been in position of editing for years.  While other lesser employees have advanced, Mr. Shah has been kept at GS12.

III.    **Plaintiff was clearly the target of retaliation when his schedule was changed to isolate him soon after his managers were called into deposition for the claims brought by Mr. Shah in the case he had filed against the agency for age discrimination.**

"To prove unlawful retaliation, a plaintiff must show: (1) that he opposed a practice made unlawful by Title VII [or the ADEA]; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action because the employee opposed the practice."

McManus v. Kelly, __ F.Supp.3d__, 2017 WL 1208395 at 7 (D.D.C.2017).

      Here Plaintiff opposed unlawful practice of discrimination against him and his senior (age) colleagues at his place of employment.  He complained to Human Resources in 2013. He filed a federal claim with his colleagues, in *Achagzai et al. v. Broadcasting Board of Governors, 170 F.Supp. 3d (D.D.C. 2016).*  Plaintiff was dismissed from the case because of a technicality, where HR manipulated him and he missed his deadline of filing with EEO within 45 days.  The Court did not rule in his favor in equity.  Afterwards, he continued to be employed with the defendant and continued to complain to his superiors, namely his manager Masood Farivar and the Director Akbar Ayazi (2014 to 2016).  In winter of 2017, plaintiff was targeted again, and forced into isolation.  This adverse treatment had an adverse effect on him which included promoting junior staff and removing him from his group, his work group to punish him for filing discrimination claims against the agency.  This has had a devastating impact on his life.  He was not able to apply for management positions that were coming up, he was not recognized for his shows, his status as a broadcaster was diminished.

6

The filing of a civil rights action regarding violations of ADEA and Title VII is certainly protected conduct. *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). The filing of an HR grievance is also constitutionally protected conduct for which an employee cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at 2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at 2 (6th Cir. Nov. 1, 2000). Plaintiff must be afforded the right to bring forth the evidence in support of his claims and retaliation.

As plaintiff has argued in cases of retaliation, by the Board, to qualify as an adverse action, the DC Circuit has explained that "[a]n employee must experience materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." <u>Douglas v. Donovan</u>, 559 F.3d 549, 552 (D.C.Cir.2009); see also <u>Taylor v. Small</u>, 350 F.3d 1286, 1293 (D.C.Cir.2003) (defining "adverse employment action" as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.").

In the context of retaliation claims, however, the definition of adverse action is arguably somewhat broader, such that "actions giving rise to claims are 'not limited to discriminatory actions that affect the terms and conditions of employment,' but reach any harm that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" <u>Baird v. Gotbaum</u>, 662 F.3d 1246, 1248–49 (D.C.Cir.2011) (quoting <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 64, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). Despite this seemingly more relaxed standard, however, the Court of Appeals has been careful to forewarn that "[a]ctionable retaliation claims are [still] limited to those where an employer causes

7

'material adversity,' not 'trivial harms.'" Wiley, 511 F.3d at 161 (quoting Burlington N., 548 U.S. at 68, 126 S.Ct. 2405).

In <u>Sledge v. District of Columbia</u>, 63 F.Supp.3d 1 (2014) this court in outlining the framework for proving retaliation held that:

> *"To prove a prima facie case of retaliation, a plaintiff must show (1) that he engaged in a statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two. <u>Hamilton v. Geithner</u>, 666 F.3d 1344, 1357 (D.C.Cir.2012) (citation omitted). Further, with respect to whether the employer's action is "materially adverse" for the purposes of a retaliation claim, courts consider whether the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006);*

The Court notably added:

> *"However, to establish the requisite causal nexus between the protected activity and the employer's materially adverse action, a plaintiff must demonstrate by direct or circumstantial evidence that the employer had actual knowledge of the protected activity and took adverse action against him because of it. See <u>Jones v. Bernanke</u>, 557 F.3d 670, 678 (D.C.Cir.2009); see also <u>Cones v. Shalala</u>, 199 F.3d 512, 521 (D.C.Cir.2000); <u>Lowe v. District of Columbia</u>, 669 F.Supp.2d 18, 29–30 (D.D.C.2009)."*

Retaliation claims brought under Title VII are subject to the same burden–shifting framework at the summary judgment stage as single-motive discrimination claims. See Jones, 557 F.3d at 678; see also <u>Rattigan v. Holder</u>, 982 F.Supp.2d 69, 82 (D.D.C.2013) ("[A] Title VII retaliation claim cannot rely on a mixed motive theory."). As explained earlier, although the McDonnell–Douglas framework applies, the D.C. Circuit has directed district courts to fast forward to the ultimate question of whether all of the evidence, taken together, supports an inference of retaliation when the employer has proffered a legitimate, non-discriminatory reason for the adverse action at

8

issue. See Jones, 557 F.3d at 678 (citing <u>Wiley v. Glassman</u>, 511 F.3d 151, 155–56 (D.C.Cir.2007)); see also <u>Aka v. Wash. Hosp. Ctr.,</u> 156 F.3d 1284, 1294 (D.C.Cir.1998) (en banc)). Accordingly, "the court reviews each of the three relevant categories of evidence—prima facie, pretext, and any other—to determine whether they 'either separately or in combination' provide sufficient evidence for a reasonable jury to infer retaliation." Jones, 557 F.3d at 678 (citing <u>Waterhouse v. District of Columbia</u>, 298 F.3d 989, 996 (D.C.Cir.2002)).

A plaintiff may support an inference that the employer's stated reasons were pretextual, and the real reasons were prohibited discrimination or retaliation, by citing the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, or the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff, or other relevant evidence that a jury could reasonably conclude evinces an illicit motive. See <u>Brady v. Office of the Sergeant at Arms</u>, 520 F.3d @495, (D.C.Cir.2008).

In <u>Rattigan v. Holder</u>, 643 F.3d 975, 986 (D.C.Cir.2011) this Court held that: "Whether a particular adverse action satisfied the materiality threshold is generally a jury question, with our role limited to determining whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could find the action materially adverse." See also, <u>Pardo-Kronemann v. Donovan</u>, 601 F.3d 599, 607 (D.C.Cir.2010) (explaining, in the context of claim that reassignment of duties was materially adverse, that "whether a particular reassignment of duties constitutes an adverse action is generally a jury question" (internal quotation marks and alterations omitted)) See also <u>Czekalski v. Peters</u>, 475 F.3d 360, 365 (D.C.Cir. 2007) ("Whether a particular reassignment of duties constitutes an adverse action for purposes of Title VII is generally a jury question").

In the instant case, the issue of retaliation suffered by Shah is question for the jury. He engaged in protected activity when he brought her claims to the Equal Employment Opportunity Commission and subsequently filed a federal claims against his employer for discrimination based on his age.  His employer took adverse action against at the very next opportunity, by failing to benchmark advance him to GS 13, when he clearly qualified.

> **a. BBG clearly retaliated against Mr. Shah when management failed to benchmark him to GS13, and changed his job description without notice.**

As stated before, Mr. Shah should have been able to advance to GS 13.  But Mr. Shah is still GS12 to this day, while several of his colleagues, who are younger and less experienced were benchmarked to GS13.  The failure to benchmark was directly related to his attempt to bring a claim against the agency.  Bringing a claim and filing claim in court are all protected activities.

Failure to benchmark and changes to plaintiff's job description are **material facts** upon which the outcome of a legal case may rely, and which must be decided by a jury.

> "To prove unlawful retaliation, a plaintiff must show: (1) that he opposed a practice made unlawful by Title VII [or the ADEA]; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action because the employee opposed the practice."

McManus v. Kelly, __ F.Supp.3d__, 2017 WL 1208395 at 7 (D.D.C.2017).

Here Plaintiff opposed unlawful practice of discrimination against him and his senior (age) colleagues at his place of employment.  During February 2017, he was not even named for benchmarking and he was ignored for any other opportunities.  He complained, and the only time he was offered a possible resolution to benchmarking was then he would threaten to file another complaint.  In fact he was told by Mr. Ayazi, the Director of East Asia service that if Mr. Shah agreed to drop his claims, that he would be promoted to GS13.  But if he refused to drop his

10

claims of discrimination, that would not be promoted to GS13. This essentially means, that if Mr. Shah did not agree to drop his claims against the agency the agency would punish him by not giving him what he is entitled to after decades of work and at least last ten years of being an editor, and managing the evening shift. *When Mr. Shah refused to drop is claims, he was never promoted, and punished to remain GS12. While other lesser qualified staff were promoted to GS13 because they had not engaged in protected activity and management did not retaliate against them.*

The filing of a civil rights action regarding violations of ADEA and Title VII is certainly protected conduct. *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). The filing of an HR grievance is also constitutionally protected conduct for which an employee cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at 2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at 2 (6th Cir. Nov. 1, 2000). In Plaintiff's complaint he alleges instances of protected conduct in describing these Defendants retaliatory actions. Plaintiff must be afforded the right to bring forth the evidence in support of her claims and retaliation.

b. **Plaintiff has been excluded from receiving GS13 promotion based on <u>his age</u>.**

It is an undisputed fact that Mr. Shah who has been at the agency performing GS13 tasks for years (at first for about two decades he was an on-air talent, similar to younger GS13 employees), and later took on the job of editing during the evening shift, a GS13, qualifier, but he is still GS12.

Mr. Shah was adversely impacted when he was not promoted to GS13 as a form of retaliation for his protected activity, and because of his age. Defendant has not offered any

evidence to prove the contrary. The only argument they make is the proximity in time, of original protected activity and the benchmarking of 2016 – 2017. However, in the meantime they also changed his job description without notice, failing to follow their own policy.

The changes in Mr. Shah's job description changed the terms and conditions of his position and adversely impacted him.

### c. Failing to Benchmark as evidence of discrimination based on age, Count II.

Defendant is consistently arguing and trying to persuade this court that benchmarking is a form of job application process where Mr. Shah would need to 1. Seek a promotion and be denied; 2. For which he was qualified, and 3. Other employees of similar qualifications were indeed promoted and he was denied. However, the reality is, that during the benchmarking period, the director gave a set of forms, to the managers of the staff to mark off certain boxes to qualify an individual employee for GS13. It is unclear whether such a form was produced for Shah or if there was benchmarking form at all. Further it is not clear who had the authority to decide whether he qualified. These were the same managers, he had brought age discrimination claims against, only a short time before, in fact, his managers were deposed a few months before the benchmarking process started at VOA.

He established a prima facie case of discrimination based on age, when he was retaliated against during the benchmarking period. Clearly, he has suffered adverse action. 1. he was denied GS13 benchmarking, 2. For which he was qualified, (if for no other reason, but because she was an on air talent, which defendant has never denied), 3. Other younger employees, who were not qualified for GS13 were given GS13. This is a proven fact, that other less qualified

(not experts in the language of Pashto or on air talents) were benchmarked to GS13. Not one of the senior employees who had filed a complaint against the agency were benchmarked.

### d. Plaintiff suffered a hostile work environment

Mr. Shah's work environment was hostile towards him because of his age, the Board clearly wanted to implement a new format, or as management calls it a "face lift" as clearly stated by Ms. Beth Mendelson, in the quote of her deposition above. Mr. Shah is old, he looks old, he has a tremor in his hand and in his voice. The agency targeted him. The culture of the agency is to force the old employees to retire. They say, it is a new era of technology in VOA and clearly the older generation does not have a place or voice in this agency. Mr. Shah's hand tremor is age related, and aggravated by the extreme levels of anxiety he suffers at this place of employment. His managing editor, Ms. Shaesta Lami, made fun of him and laughed at him, because his hand was shaking. She told Mr. Shah that the reason his hand was shaking was because he was afraid of her, because she is his managing editor. While in reality, Mr. Shah is an expert editor of 25 years, while Ms. Lami has trouble with basic sentence structure. Mr. Shah was forced to tolerate this type of treatment on a daily basis, simply because of his age. This is/was the goal of the new format, that Ms. Mendelson described as achieving a "facelift" i.e. getting ride of the senior staff at whatever cost necessary. They have and continue to achieve the facelift they sought out, and the new format is in full effect.

**Conclusion**

Based on the facts at hand, this case ought not to be dismissed and the material facts in dispute must be heard by the trier of fact.

Respectfully Submitted,
By: /s/ Shameela Sarah Shah

SHAMEELA SARAH SHAH
Bar #995094
1310 L Street NW
Suite 750
Washington DC 20005
202-450-1059 / 202-450-1051
Email: s.sarah.shah@lawofficesofshahandshah.com

*Counsel for Plaintiff*