## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SYED B. SHAH,<br><br>    *Plaintiff*,<br><br> v.<br><br>BROADCASTING BOARD OF<br>GOVERNORS,<br><br>    *Defendant*. | Civil Action No. 18-1328 (RDM) |

### <u>MEMORANDUM OPINION</u>

  This matter is before the Court on Defendant's motion to dismiss Plaintiff's amended complaint.  Dkt. 23.  Plaintiff Syed B. Shah alleges that his employer, the Broadcasting Board of Governors ("the Board"), discriminated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*.  Dkt. 20 at 5–6 (Am. Compl. ¶¶ 15–22).  Plaintiff also claims that the Board retaliated against him and subjected him to a hostile work environment in violation of the ADEA.  *Id.* at 6–8 (Am. Compl. ¶¶ 23–28).  The Court previously granted summary judgment on certain of Plaintiff's claims and dismissed the others, allowing Plaintiff to file an amended complaint to correct deficiencies in his original complaint.  Minute Order (Aug. 16, 2019).  Plaintiff filed an amended complaint, Dkt. 20, but it contains few discernable changes from his original complaint, Dkt. 1.

  Because Plaintiff has made no change to his complaint that would warrant a different decision, and because Plaintiff's claims are in any event without merit, the Court will accordingly **GRANT** the Board's motion to dismiss.

# I.   BACKGROUND

As it must, the Court accepts Plaintiff's factual allegations as true for purposes of evaluating the Board's motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## A.   Factual Background

Plaintiff Syed B. Shah served as an International Broadcaster at Voice of America's ("VOA") Pashto division for thirty-four years.  Dkt. 20 at 3 (Am. Compl. ¶ 6).  Fluent in Farsi and Pashto, two languages spoken in Afghanistan, Plaintiff edited, transcribed, and translated materials for VOA to broadcast by radio.  *Id.* (Am. Compl. ¶ 7).  Until his retirement on or about February 2017, *id.* at 4 (Am. Compl. ¶ 10), Plaintiff was compensated at the GS-12 level, *id.* at 3 (Am. Compl. ¶ 6).  The Board—now called the U.S. Agency for Global Media—is the federal agency that oversees the VOA.

In 2014, Plaintiff filed suit against the Board for discrimination on the basis of national origin in violation of Title VII and on the basis of age in violation of the ADEA.  *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164 (D.D.C. 2016) ("*Achagzai I*").  The suit was one of many brought by the same counsel on behalf of international broadcasters at the VOA alleging similar episodes of discrimination.[1]  In that suit, Plaintiff and four others alleged "37 categories of discriminatory conduct," including "a barrage of insults and insulting behavior aimed toward Plaintiffs," "frequent downgrades in assignments," several "change[s] [to] their schedules."  *Achagzai I*, 170 F. Supp. 3d at 169.  They further alleged that they were retaliated against when

---

[1]  *See Achagzai v. Broad. Bd. of Governors*, 109 F. Supp. 3d 67 (D.D.C. 2015) ("*Achagzai II*"); *see also Stanazai v. Broad. Bd. of Governors,* No. 17-2653, 2019 WL 1046296 (D.D.C. Mar. 5, 2019); *Mohmand v. Broad. Bd. of Governors*, No. 17-618, 2018 WL 4705800 (D.D.C. Sept. 30, 2018); *Khadem v. Broad. Bd. of Governors*, No. 18-1327 (D.D.C. filed June 4, 2018).

they voiced their concerns.  *Id.*  This Court dismissed all of Plaintiff's claims in that matter

because he had not exhausted his administrative remedies.  *Id.* at 176, 178.

Plaintiff filed this case in June 2018, raising a similar array of allegations—many

vague—about the Board's allegedly discriminatory and retaliatory actions.  *See generally* Dkt. 1

(Compl.).  Most saliently, Plaintiff alleges that the Board altered his job responsibilities by:

(1) requiring him to work with several forms of multimedia, instead of the radio translations to

which he was accustomed; and (2) requiring him to conduct "translations not [only] from English

to Pashto" as he had previously done, "but also from Pashto to English."  Dkt. 20 at 4 (Am.

Compl. ¶ 13).  Completing these new responsibilities, Plaintiff alleges, was possible "only [for]

the newly trained and younger staff."  *Id.*  The senior staff, in turn, were left "to either retire or

be fired for failing to complete assignments."  *Id.*

Plaintiff complained to management about these changes.  *Id.* (Am. Compl. ¶ 11).  But

when he did, "management became more hostile towards him" and "isolat[ed] him to the

evening shift," where he had to run a show on his own.  *Id.*  Meanwhile, "[y]ounger employees

were given shows and on[-]air interviews and assignments that were not available to the senior

staff and in particular to [Plaintiff]."  *Id.* at 6 (Am. Compl. ¶ 19).  Making matters worse,

according to Plaintiff, during the subsequent June 2017 "benchmarking" period, "management

failed to give him steps" to gain a promotion to the GS-13 level, even though "less deserving but

younger colleagues [received] promot[ions] based on the benchmarking."  *Id.* at 4 (Am. Compl.

¶ 14).

In sum, then, Plaintiff alleges that changes to his work responsibilities hindered his

performance, *id.* at 6 (Am. Compl. ¶ 19); that those changes were made in retaliation for his prior

suit against the Board or based on discriminatory animus against older employees, *id.* at 3, 6

(Am. Compl. ¶¶ 8, 19–21); and that the Board's failure to promote him was both retaliatory and discriminatory, *id.* at 4 (Am. Compl. ¶ 14).

**B.      Procedural Background**

On March 20, 2017, Plaintiff initiated contact with an EEO counselor.  Dkt. 20-1 at 3; Dkt. 25-2 at 13 (EEO Compl.).  In his EEO complaint, Plaintiff alleged that the Board retaliated against him for engaging in protected EEO activity and discriminated against him based on his age and, in particular, that the Board's imposition of the new work responsibilities and improper benchmarking were the products of retaliatory and discriminatory animus.  Dkt. 25-2 at 13 (EEO Compl.).  Roughly fourteen-and-a-half months later, on June 4, 2018, Plaintiff filed the instant suit.  Dkt. 1.

Plaintiff's initial complaint contained three counts: (1) discrimination based on age in violation of Title VII, *id.* at 5 (Compl. ¶¶ 15–17); (2) discrimination based on age in violation of the ADEA, *id.* at 6 (Compl. ¶¶ 18–22); and (3) retaliation in violation of the ADEA, *id.* at 6–8 (Compl. ¶¶ 23–28).  Plaintiff also made passing references to a hostile work environment, alleging that "[t]he hostile working environment was sufficiently severe and/or pervasive to alter the conditions of employment for Plaintiff and to create an abusive working environment."  *Id.* at 8 (Compl. ¶ 28).[2]

Defendants moved to dismiss, or in the alternative, for summary judgment.  Dkt. 13. They argued that Plaintiff (1) failed to exhaust his administrative remedies with respect to his claims related to his modified work responsibilities, Dkt. 13-1 at 8–9; (2) failed to state a claim

---

[2]  Plaintiff's original complaint named the Board and Jeffrey Shell, the Board's then-Chairman, as Defendants.  Dkt. 1 at 1 (Compl.)  That complaint raised no allegations as to Shell specifically, *id.*, and the amended complaint dropped Shell as a defendant, Dkt. 20 at 1 (Am. Compl.).

for age discrimination under Title VII because age is not a protected class under Title VII, *id.* at 5–6; and (3) failed to state a claim for discrimination, retaliation, or a hostile work environment under the ADEA, *id.* at 6–12.  Plaintiff opposed the motion.  Dkt. 15.  After a brief stay in the action, *see* Minute Order (Jan. 11, 2019), Defendants filed their reply to Plaintiff's opposition, Dkt. 19, after which the Court ordered parties to appear for oral argument, *see* Minute Order (Aug. 9, 2019).

Oral argument took place on August 15, 2019.  At the argument, the Court first dismissed Plaintiff's Title VII, age-discrimination claim:

> THE COURT:  . . .  So let me start with the Title VII claims.  The Government states, I think quite correctly, that there's no claim for age discrimination under Title VII.  I guess the question I just had for the plaintiffs is[:] is there any disagreement with that or should I dismiss the Title VII claims?
>
> MS. SHAH:  Your Honor, one of the bases for them being targeted is under Title VII for—based on their age.
>
> THE COURT:  But age isn't a classification under Title VII.  It is under the Age Discrimination Act, but not under Title VII.
>
> MS. SHAH:  The ADEA, yes, I understand.  So Title VII, yes, your Honor, you could.
>
> THE COURT:  So I will dismiss, then, the Title VII claims.
>
> MS. SHAH:  Okay.

Dkt. 22 at 3:20–4:11 (Tr. of Oral Arg.).

The Court then turned to Defendants' motion for summary judgment.  It concluded that Plaintiff failed to exhaust his administrative remedies with respect to his claim premised on the change in his work responsibilities that occurred in May 2018,[3] and, thus, the Court granted

---

[3]  In Plaintiff's original complaint, he alleged that his work responsibilities had been unlawfully changed twice—once in February 2017 and again in May 2018.  Dkt. 1 at 4 (Compl. ¶ 10).

summary judgment in Defendants' favor on that claim. *Id.* at 4:12–9:7 (Tr. of Oral Arg.); *see also id.* 36:16–20 (Tr. of Oral Arg.). But the same conclusion did not follow, the Court explained, for Plaintiff's claim premised on the change in his work responsibilities that occurred in February 2017; as to that claim, the record before the Court lacked sufficient detail to permit it to determine whether Plaintiff had exhausted his administrative remedies. *Id.* at 21:9–22:4 (Tr. of Oral Arg.). The Court, accordingly, encouraged the parties to confer to discern when EEO counseling was initiated and permitted Defendants to re-assert their objection to the February 2017 position's non-exhaustion, if doing so was supported by the facts. *Id.* at 22:5–12 (Tr. of Oral Arg.).

Subsequent to that exchange, Defendants urged the Court—"independent of the exhaustion issue"—to dismiss Plaintiff's discrimination claim premised on the February 2017 changes to his job responsibilities. *Id.* at 23:10–11 (Tr. of Oral Arg.). In response, the Court inquired of Plaintiff's counsel: "What was the change in the position [that] you think . . . constitutes an adverse employment action?" *Id.* at 23:12–14 (Tr. of Oral Arg.). An extended colloquy ensued, with the Court informing Plaintiff's counsel that "it's not the case that any change is actionable." *Id.* at 25:2–5 (Tr. of Oral Arg.). Plaintiff's counsel responded that requiring Plaintiff to translate from Pashto to English, in addition to translating from English to Pashto, constituted sufficient grounds for an ADEA discrimination or retaliation claim because it was a "completely" different task, akin to "driving your car to work and then flying back home." *Id.* at 29:3–4 (Tr. of Oral Arg.). The Court was unpersuaded and concluded that:

> [T]he Government makes a fair point . . . . [Y]ou do have to allege that there was either [1] a change in the terms and conditions of employment with respect to a discrimination claim or [2] [a] change [that] was sufficiently severe that it's

---

Plaintiff's amended complaint makes no mention of the May 2018 incident. Dkt. 20 at 4 (Am. Compl. ¶ 10).

the type of change that would discourage somebody from bringing a discrimination claim for purposes of the retaliation claim.

*Id.* at 33:1–8 (Tr. of Oral Arg.).  Because Plaintiff had failed to do so, the Court dismissed Plaintiff's claim relating to the February 2017 change in his responsibilities.  *Id.* at 38:16–20 (Tr. Of Oral Arg.).  The Court did, however, offer Plaintiff "a chance to refile something" that clarified the adverse employment action that he suffered.  *Id.* at 33:21–22 (Tr. of Oral Arg.).

Finally, the Court considered Plaintiff's claim that the GS-13 benchmarking process was infected with retaliatory or discriminatory animus, asking Plaintiff's counsel to point to "where in the complaint it allege[d] facts that [were] more than just the legal conclusion that there was discrimination."  *Id.* at 35:2–3 (Tr. of Oral Arg.).  After Plaintiff's counsel attempted to do so, the Court concluded: "with respect to the GS-13 benchmarking, I think you need to, in any event, allege more and [to] provide more detail in your complaint about what [1] the adverse employment action is or [2] the retaliatory action is."  *Id.* at 37:20–23 (Tr. of Oral Arg.).

The Court summarized the results of the hearing as follows:

[W]hat I'm going to do is grant summary judgment on exhaustion with respect to the 2018 [job-responsibility change], grant the motion to dismiss with respect to Title VII.  And with respect to the remainder of the complaint, I'm going to dismiss it for failure to state a claim, both under Rule 8 and Rule 12(b), because I just don't think you've adequately articulated what your claim is in the case.

*Id.* at 38:13–38:20 (Tr. of Oral Arg.)

Plaintiff filed an amended complaint on August 30, 2019.  Dkt. 20.  But little changed: Plaintiff made a series of small formatting changes and omitted the allegations relating to the May 2018 position description.  *Id.* at 4 (Am. Compl. ¶ 10); *see also* Dkt. 29.  Plaintiff also attached to the amended complaint an email and "EEO Counseling Initial Intake Sheet" purporting to show that he initiated the EEO counseling process on March 20, 2017 and that he

therefore timely exhausted his administrative remedies with respect to the February 2017 position-description change.  Dkt. 20-1.

The Board once again moves to dismiss, arguing that Plaintiff has failed to state (1) a Title VII claim for age discrimination, as "age is not a protected classification under Title VII," Dkt. 23-1 at 8; (2) a retaliation claim under the ADEA because he has not adequately alleged causation, *id.* at 8–10; (3) a claim for discrimination under the ADEA, *id.* at 10–13; or (4) a claim for a hostile work environment under the ADEA, *id.* at 13–15.

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the allegations contained in the complaint.  A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also* Fed. R. Civ. P. 8(a).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Id.*  Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (citations omitted).  If the complaint's allegations fail to meet this standard, the court must dismiss the action.  *Id.*

## III.    ANALYSIS

The Board argues that Plaintiff's claims should be dismissed for two overarching reasons. First, it contends that Plaintiff "has made no meaningful changes to the complaint that this Court

previously held inadequate." Dkt. 23-1 at 5.  Second, it argues that Plaintiff's claims fail on their

merits irrespective of the Court's prior decision as to the adequacy of Plaintiff's initial

complaint.  *Id.*  The Court will address each argument in turn.

## A.     Failure to Correct Prior Deficiencies

To protect judicial economy, preserve orderly litigation, and promote uniformity in their

decisions, courts generally abide by the "law-of-the-case doctrine."  *Crocker v. Piedmont*

*Aviation, Inc.*, 49 F.3d 735, 739–40 (D.C. Cir. 1995).  Under the doctrine, "a 'legal decision

made at one stage of litigation . . . becomes the law of the case for future stages of the same

litigation.'"  *Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999) (quoting *Williamsburg*

*Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C. Cir. 1987)).  Courts,

therefore, typically refrain from "re-open[ing] questions already decided," *Simon v. Republic of*

*Hungary*, 443 F. Supp. 3d 88, 111 (D.D.C. 2020) (quotation marks omitted), unless "there is an

intervening change in the law or if the previous decision was clearly erroneous and would work a

manifest injustice," *Kimberlin*, 199 F.3d at 500 (quotation marks omitted).  Proceeding in this

manner helps avoid inconsistency and stems from the sensible intuition that "the *same* issue

presented a second time in the *same case* in the *same court* should lead to the *same result*."

*LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc).

The doctrine is not without its exceptions, however, and one important exception applies

here: "[i]nterlocutory orders are not subject to the law of the case doctrine and may always be

reconsidered prior to final judgment."  *Langevine v. District of Columbia*, 106 F.3d 1018, 1023

(D.C. Cir. 1997); *see also Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir.

2009); *Sloan v. Urban Title Servs., Inc.*, 770 F. Supp. 2d 216, 224 (D.D.C. 2011).  That is

because, under the Federal Rules of Civil Procedure, "orders entered by a district court 'may be

revised at any time before the entry of a judgment adjudicating all the claims and all the parties'

rights and liabilities.'" *Pub. Citizen, Inc. v. Trump*, 361 F. Supp. 3d 60, 76 (D.D.C. 2019)

(quoting Fed. R. Civ. Pro. 54(b)).  Revisions to interlocutory orders, accordingly, should issue

"as justice requires," *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227

(D.C. Cir. 2011) (quotation marks omitted), although courts must nevertheless remain mindful

that "principles of judicial efficiency and expedition counsel against revisiting prior rulings

absent good ca[u]se," *Pub. Citizen*, 361 F. Supp. 3d at 76.

    In this case, the Court initially dismissed or granted summary judgment in Defendants'

favor on all of Plaintiff's claims at the August 15, 2019 oral argument.  Dkt. 22 at 38:13–38:20

(Tr. of Oral Arg.).  That decision was interlocutory—the Court did not enter final judgment and,

indeed, invited Plaintiff to file an amended complaint.  *See Ciralsky v. CIA*, 355 F.3d 661, 666

(D.C. Cir. 2004) ("[T]he dismissal without prejudice of a complaint [i]s not final . . . because the

plaintiff is free to amend his pleading and continue the litigation." (emphasis omitted) (quotation

marks omitted)); *Alaska v. FERC*, 980 F.2d 761, 764 (D.C. Cir. 1992) ("In the civil context,

grants of partial summary judgment are generally considered interlocutory orders, not subject to

immediate review.").

    Plaintiff accepted that invitation and roughly two weeks after oral argument filed an

amended complaint, Dkt. 20, which the Board asks the Court to dismiss for failure to state a

claim, Dkt. 23.  The Board argues, in part, that Plaintiff's failure to cure—or even to attempt to

cure—the deficiencies in the original complaint warrants dismissal.  *See, e.g.*, Dkt. 23-1 at 8

("[Plaintiff's] amended complaint contains no revisions to his prior allegations and so again fails

to state a claim for unlawful retaliation."); *id.* at 11–12 ("[Plaintiff] has not added any allegations

to his amended complaint regarding the change in position description.  For that reason, the

Court should again dismiss his claim as inadequately pleaded.").  In other words, because both

complaints raised the same asserted deficiencies, both complaints should meet the same fate.  *Id.*

at 8, 11–12.  The question, therefore, is whether, given the interlocutory nature of the Court's

decision at oral argument, either "justice," *Capitol Sprinkler*, 630 F.3d at 227, or "good ca[u]se"

requires treating the amended complaint differently from the original, *Pub. Citizen*, 361 F. Supp.

3d at 76.

Neither do.  The amended complaint, Dkt. 20, is indistinguishable from the original

complaint in all material respects, Dkt. 1.  It contains only two changes that are not related to the

formatting of the document: (1) Plaintiff, by removing the five words "and again in May 2018,"

has eliminated the 2018 position description change as a basis for his ADEA claims, Dkt. 29 at 6

(Am. Compl. ¶ 10, Redline); and (2) Plaintiff no longer names the Board's then-Chairman as a

defendant, *id.* at 1 (Am. Compl. Redline).  These deletions neither bear on why the Court

rejected Plaintiff's claims the first time around—their legal insufficiency—nor do they alter the

legal theories or issues at stake.  Plaintiff offers no explanation how the amended complaint

cures any of the deficiencies that prompted the Court to dismiss the original complaint, and he

fails to point to any error that the Court committed or change in the law that might support

revisiting the questions the Court previously decided.  There is, in other words, no "good

ca[u]se" to revisit the Court's prior decision rejecting Plaintiff's claims.  *Pub. Citizen*, 361 F.

Supp. 3d at 76.  "[J]ustice" does not "require[]" a different result either.  *Capitol Sprinkler*, 630

F.3d at 227.

Given the extensive overlap—indeed, near-identity—between Plaintiff's original and

amended complaints, and in view of the equitable considerations discussed above, the Court

concludes that each claim in Plaintiff's amended complaint should be dismissed here, just as each was originally dismissed.

## B.    Pleading Failures

Even if the legal sufficiency of Plaintiff's claims merited reconsideration, they would still fail under Rules 8 and 12(b)(6).  The Court addresses each claim in turn.

### 1.    *Title VII*

Count One of the amended complaint avers that "Plaintiff is an employee within the meaning of Title VII and belongs to classes protected under the statute; namely age."  Dkt. 20 at 5 (Am. Compl. ¶ 15).  But, as the Court previously explained at the August 15, 2019 hearing, age is not an actionable classification for purposes of Title VII.  Dkt. 22 at 4:4–5 (Tr. of Oral Arg.); *see also Mohmand v. Broad. Bd. of Governors*, 2018 WL 4705800, at *3 (D.D.C. Sept. 30, 2018) ("Title VII prohibits discrimination based on an individual's 'race, color, religion, sex, or national origin,' but not based on an individual's age.") (quoting 42 U.S.C. § 2000(e)-2(a)).  The Court will, accordingly, dismiss Count One of Plaintiff's amended complaint for failure to state a claim: age discrimination is simply not cognizable under Title VII.

### 2.    *ADEA Age Discrimination*

Count Two of the amended complaint alleges that the Board discriminated against Plaintiff based on his age in violation of the ADEA.  Dkt. 20 at 5–6 (Am. Compl. ¶¶ 18–22).  The ADEA requires that "[a]ll personnel actions affecting [federal] employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age."  29 U.S.C. § 633a(a).  There are accordingly two elements to an ADEA discrimination claim: the plaintiff must allege "(1) that he 'suffered an adverse employment action' and (2) that his employer took that action 'because of' his age."  *Sagar v. Mnuchin*, 305

12

F. Supp. 3d 99, 108 (D.D.C. 2018) (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490,

493 (D.C. Cir. 2008)) (subsequent history omitted); *see also Blackwell v. SecTek, Inc.*, 61 F.

Supp. 3d 149, 161 (D.D.C. 2014).

Plaintiff's age discrimination claim is premised on the following allegations:

(1) "[y]ounger employees were given shows[,] on air interviews[,] and assignments that were not

available to the senior staff and in particular to [Plaintiff]," Dkt. 20 at 6 (Am. Compl. ¶ 19);

(2) the Board "required that younger employees replace the senior staff," *id.* (Am. Compl. ¶ 20);

(3) "management harassed and targeted the senior staff, including plaintiff[,] to force them to

either leave their positons [sic] or be terminated," *id.* (Am. Compl. ¶ 21); (4) "management failed

to . . . [promote Plaintiff] to become GS 13 . . . [while] less deserving but younger colleagues

were promoted," *id.* at 4 (Am. Compl. ¶ 14); and (5) the Board made Plaintiff's work

responsibilities more difficult and thus "forc[ed] him into constructive retirement," by

(i) changing the form of media on which Plaintiff was required to work from radio to television;

(ii) requiring Plaintiff to translate from Pashto to English, in addition to translating from English

to Pashto; and (iii) forcing Plaintiff to work the evening shift, which involved running a show on

his own, *id.* (Am. Compl. ¶¶ 10–13).

The Board contends that these allegations fail to state an ADEA discrimination claim

because they (1) "lack . . . specificity" and are "insufficiently detailed," and (2) fail clearly to

identify the adverse employment action at issue.  Dkt. 23-1 at 10–11.  The Board further asserts

that, to the extent Plaintiff argues that his non-promotion to GS-13 through the benchmarking

process constitutes actionable discrimination on behalf of the Board, he "fails in two ways to

plead a prima facie case:" (1) "he fails to identify any employee of similar qualifications that was

promoted while he [was] not;" and (2) he "fails the qualifications prong of the prima facie test by

vaguely alleging only that on air talent requires that his position be elevated to GS-13." *Id.* at 12 (quotation marks omitted).

At the outset, the Court notes that the Board is mistaken in faulting Plaintiff for failing to plead a prima facie case. *Id.*  To survive a motion to dismiss, "'the plaintiff [need] not plead the elements of a prima facie case.'"  *Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014) (quoting *Brady*, 520 F.3d at 493); *see also Montgomery v. Omnisec Int'l Sec. Servs., Inc.*, 961 F. Supp. 2d 178, 183 (D.D.C. 2013) ("In employment discrimination cases involving ADEA or Title VII claims, a plaintiff need not plead facts establishing a prima facie case.").  That is because "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).  At this juncture, consequently, "the 'only question before [the Court] is whether [the plaintiff has] alleged facts that, taken as true, render [his] claim of [discrimination] plausible.'"  *McManus v. Kelly*, 246 F. Supp. 3d 103, 112 (D.D.C. 2017) (quoting *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015).  That test is not "an 'onerous' one," to be sure.  *Id.* at 111 (quoting *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 466–67 (D.C. Cir. 2017)).  But, for the following reasons, the Court concludes that Plaintiff has still failed to meet it.

To start, Plaintiff fails to allege an adverse employment action, one of the two "essential elements of a discrimination claim under the ADEA."  *Mohmand*, 2018 WL 4705800, at *4 (quotation marks omitted).  An adverse employment action in the context of an ADEA discrimination claim requires alleging "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'"  *Achagzai I*, 170 F. Supp. at 181 (quoting *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009)).  But "'not everything that makes an

employee unhappy is an actionable adverse action.'" *Achagzai v. Broad. Bd. of Governors*, 2020 WL 5530135, at *5 (D.D.C. Sept. 14, 2020) (quoting *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001)).  '"Employer actions regarding assignments or duties that are temporary in nature and not accompanied by economic consequences,' for example, 'are rarely cognizably adverse.'" *Id.* (quoting *Achagzai v. Broad. Bd. of Governors*, 308 F. Supp. 3d 396, 409 (D.D.C. 2018).  "Similarly, '[p]urely subjective injuries, such as dissatisfaction with a reassignment, are not adverse actions' either." *Id.* (quoting *Bolden v. Clinton*, 847 F. Supp. 2d 28, 40 (D.D.C. 2012); *see also Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006).  Rather, "[t]o survive a motion to dismiss, the allegations contained in the complaint must be sufficient to allow a reasonable trier of fact to find an objective, tangible harm." *Mohmand*, 2018 WL 4705800, at *4.

Plaintiff's complaint fails to satisfy this test: even when viewed in the light most favorable to Plaintiff, the amended complaint fails "plausibl[y]" to allege that he suffered an adverse employment action. *McManus*, 246 F. Supp. 3d at 112.  Plaintiff claims that (1) the Board "required that younger employees replace the senior staff;" (2) "management harassed and targeted the senior staff, including plaintiff to force them to either leave their positons [sic] or be terminated;" and (3) "[y]ounger employees were given shows[,] on air interviews[,] and assignments that were not available to the senior staff and in particular to [Plaintiff]." Dkt. 20 at 6 (Am. Compl. ¶¶ 19–21).  These statements, however, are too vague and conclusory to sustain a discrimination claim.  Plaintiff does not allege even one instance of harassment; one concrete opportunity he was denied; or one cognizable change in the terms and conditions of his employment.  Although "facts in a complaint need not be detailed . . . [,] 'more than an unadorned, the-defendant-harmed-me accusation'" is required. *Frost v. Cath. Univ. of Am.*, 960

F. Supp. 2d 226, 230 (D.D.C. 2013), *aff'd*, 555 F. App'x 6 (D.C. Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).  Those adornments are missing here.  *Cf. Mohmand*, 2018 WL 4705800, at *5 ("Mohmand alleges that the Board favored younger, less experienced staff by giving them [] plum assignments . . . and relegating him to production because of his age. . . .  These allegations, however, lack specificity and, as alleged, do not rise to the level of an adverse employment action." (citation and quotation marks omitted)).

Plaintiff's claim that the Board made his work responsibilities more difficult suffers from a similar flaw.  Plaintiff does not explain how the change in his translation responsibilities affected the terms or conditions of his employment, Dkt. 20 at 4 (Am. Compl. ¶¶ 10–13)), even though he was asked at oral argument to do just that, Dkt. 22 at 24:15–30:3.[4]  And the little that can be inferred from the amended complaint—for instance, that Plaintiff found his new assignments hard "to complete," Dkt. 20 at 4 (Am. Compl. ¶ 13)—fall short of what is required to allege an adverse action based on increased workload.  *See Mogenhan v. Napolitano*, 613 F.3d

---

[4]  Plaintiff did file a declaration in response to the Board's motion to dismiss stating that his health has significantly deteriorated as a result of the change to his job requirements.  Dkt. 25-2 at 1–2 (Shah Decl.).  But the declaration fails to identify the types of tangible harms typically cognizable as adverse employment actions—for example, a "reduction in supervisory duties," an "elevation of less qualified staff members to supervisory positions," or a "reduction in salary, pay grade, or benefits." *Mohmand*, 2018 WL 4705800, at *5.  Moreover, to the extent Plaintiff claims that his shift to the evening schedule constituted an adverse action because it isolated him from his co-workers, "a substantial body of authority within this district holds that employees generally may not mount [a] discrimination . . . claim[] on mere dissatisfaction with less favorable work assignments, which includes unwanted work schedules." *Achagzai v. Broad. Bd. of Governors*, 2018 WL 4705799, at *7 (D.D.C. Sept. 30, 2018) (quotation marks omitted).  Finally, the Court notes that the assertions made in Plaintiff's declaration are, in any event, beside the point, because those allegations are not "alleged in the complaint" or available in "documents attached to or incorporated by reference in the complaint." *Slovinec v. Georgetown Univ.*, 268 F. Supp. 3d 55, 59 (D.D.C. 2017), *aff'd*, 2018 WL 1052650 (D.C. Cir. Jan. 26, 2018) (quotation marks omitted); *see also McManus*, 246 F. Supp. 3d at 116 n.10 ("[T]he sufficiency of the complaint must, of course, stand or fall based on its allegations and not based on unalleged facts . . . .").

1162, 1166 (D.C. Cir. 2010) (finding material adverse action where defendant "increased [plaintiff's] workload to *five to six times* that of other employees" (emphasis added)). Consequently, the facts alleged in Plaintiff's complaint (separate from those related to the benchmarking process) are insufficient to state an adverse action cognizable under the ADEA. *See McManus*, 246 F. Supp. 3d at 112.

Plaintiff's allegations with respect to his non-promotion during the benchmarking process also fail. Although a refusal to promote qualifies as a materially adverse action, *see Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009), Plaintiff fails adequately to allege that his non-promotion was "because of" his age, *Brady*, 520 F.3d at 493. To the contrary, his sole allegation related to the benchmarking process is that he was "an on[-]air talent," which "require[d]" that the Board promote him. Dkt. 20 at 4 (Am. Compl. ¶ 14). But not only is that isolated allegation unexplained and insufficient to satisfy Rule 8, Plaintiff's benchmarking claim fails for a second reason as well—the amended complaint does not plausibly allege that Plaintiff's non-promotion was because of his age.

When the Court inquired of Plaintiff's counsel at oral argument what Plaintiff's "on-air" benchmarking allegation meant, the answer was similarly unilluminating:

> THE COURT: What does this mean, "Although he is an on[-]air talent, management failed to give him steps to become a GS-13"? What does that mean?
>
> MS. SHAH: So in order to become GS-13, you have to go through the requirements to then be able to qualify for GS-13. And when they came to do the benchmarking – and this was an evaluation of I suppose all the employees there, certain other employees were given the opportunity – were bumped up to GS-13 while the seniors, the ones who had complained, none of them were. And they had all – were trained and had done the jobs of GS-13. And one example is on[-]air talent being GS-13. The other one is being an editor in the evening shift, that's GS-13, editing other's [sic] work and all the different tasks.

THE COURT:  Just to make sure I understand this, what you're saying here and what you're intending to allege is that there are certain tasks one needs to perform as a GS-12 for some period of time to then qualify to be considered for a GS-13, is that right?

MS. SHAH:  That's part of it.  The other part of it is the reason the benchmarking happened was because at this agency, in the language services, there were even contractors, POVs, who were doing managerial position's jobs and they were getting paid far less.  And I think there was a class action.  So the benchmarking was sort of a side – I believe a side kind of management evaluation of all the different positions and all the different employees who were doing different tasks, and what pay rate would they be qualified for.

Dkt. 22 at 35:12–36:15 (Tr. of Oral Arg.).  Even with this explanation, the nature of Plaintiff's benchmarking claim remains elusive.  But, more importantly for present purposes, given the opportunity to file an amended complaint addressing this confusion, Plaintiff added nothing to his initial, insufficient allegations.  The Court is, as a result, in the same position as it was before: it can only guess how Plaintiff contends he was wronged, and cannot "draw the reasonable inference" from Plaintiff's allegations "that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Rules 8 and 12(b)(6) demand more.

For the foregoing reasons, the Court will dismiss Plaintiff's ADEA discrimination claim.

3.  *ADEA Retaliation*

In Count Three of the amended complaint, Plaintiff alleges that the Board unlawfully retaliated against him by subjecting him to the employment actions described above.  Dkt. 20 at 7 (Am. Compl. ¶ 26).  The ADEA makes it "unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation" relating to age discrimination.  29 U.S.C. § 623(d).  "To prevail on a claim of unlawful retaliation under the ADEA, a plaintiff must show that (1) he engaged in activity protected by the ADEA; (2) he

suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action." *Mohmand*, 2018 WL 4705800, at *5. "A complaint will survive a motion to dismiss if it 'allege[s] sufficient facts on each of the[se] . . . elements.'" *McManus*, 246 F. Supp. 3d at 113 (quoting *Harris*, 791 F.3d at 69).

The Court concludes that Plaintiff's retaliation claim is inadequately pled. Plaintiff has failed to allege "a causal connection between [his] protected activity and the adverse action" he allegedly suffered. *Achagzai I*, 170 F. Supp. 3d at 185. The amended complaint alleges one event that could be construed as protected activity (although the amended complaint does not label it—or any other event—as such): "Plaintiff and his colleagues had filed a complaint in 2013 based on age discrimination, reprisal and harassment," Dkt. 20 at 3 (Am. Compl. ¶ 8);[5] *see also* Dkt. 25-1 at 6 ("Plaintiff opposed unlawful practice of discrimination against him and his senior (age) colleagues at his place of employment. He complained to Human Resources in 2013. He filed a federal claim with his colleagues, in [2014]."); *id.* at 10 ("The [Board's] failure to benchmark [Plaintiff] was directly related to his attempt to bring a claim against the agency."). The adverse actions that Plaintiff alleges, however—that is, the February 2017 changes to his work responsibilities and the subsequent denial of a promotion to the GS-13 level—came years after his protected activity in 2014.

"Although judges in this circuit are of different minds about what facts a plaintiff must plead to allege a causal connection in support of a retaliation claim," *Mohmand*, 2018 WL 4705800, at *5 (citing *Menoken v. McGettigan*, 273 F. Supp. 3d 188 (D.D.C. 2017)), the D.C. Circuit has made clear that when a plaintiff relies only on temporal proximity to establish

---

[5] Although the amended complaint avers that "Plaintiff and his colleagues had filed a complaint in 2013," Dkt. 20 at 3 (Am. Compl. ¶ 8), the suit in question was in fact filed in 2014, *Achagzai I*, 170 F. Supp. 3d at 170.

causation, the plaintiff must show that "the two events are very close in time." *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (quotation marks omitted); *see also Pueschel v. Chao*, 955 F.3d 163, 167 (D.C. Cir. 2020) ("[I]n the absence of direct evidence of retaliation such claims are generally limited to conduct occurring shortly after the employee's protected activity.") (subsequent history omitted).  Here, Plaintiff alleges no facts that would support a plausible inference of retaliation and, instead, relies solely on the sequence of events—that is, the fact that he engaged in protected activity in 2014 and was subject to purportedly adverse actions in 2017.  *See* Dkt. 20 at 3 (Am. Compl. ¶ 8); Dkt. 25-1 at 6, 10.  The roughly three-year gap between Plaintiff's protected activity and the purportedly adverse actions he suffered is too long—without *any* other factual allegation that might support such an inference—to support a plausible claim of retaliation.  *See, e.g.*, *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) ("Action taken . . . 20 months later suggests, by itself, no causality at all."); *Pauling v. District of Columbia*, 286 F. Supp. 3d 179, 208 (D.D.C. 2017) ("The lack of temporal proximity between the [adverse activity] and the plaintiff's protected activity—five months—is therefore insufficient to show a causal connection[.]"); *Mohmand*, 2018 WL 4705800, at *6 ("[T]he Court lacks any basis for inferring that [plaintiff] was retaliated because of any protected activity" where "nearly two years elapsed between [plaintiff's] filing of suit before this Court and the [adverse action]."); *Pueschel*, 955 F.3d at 167 ("This court . . . has often analyzed temporal proximity in terms of months—not years."); *Gustave-Schmidt v. Chao*, 360 F. Supp. 2d 105, 118–19 (D.D.C. 2004), *aff'd*, 2004 WL 2348142 (D.C. Cir. Oct. 19, 2004) (suggesting three months is the "outer limit" where a claim of causation in the retaliation context is based solely on temporal proximity).

The Court will, accordingly, dismiss Plaintiff's ADEA retaliation claim for failure adequately to allege the required causal link.

4.  *Hostile Work Environment*

Finally, although never expressly raised as such in the amended complaint, Plaintiff appears to assert a hostile work environment claim under either Title VII or the ADEA.  Dkt. 20 at 3–4, 8 (Am. Compl. ¶¶ 9, 27–28).  To the extent he does so, the Court will dismiss that claim as well.

As the Court has previously explained, "there is a high bar for demonstrating a hostile work environment claim."  *Mohmand*, 2018 WL 4705800, at *6 (quotation marks omitted).  That is because, to plead such a claim, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Achagzai I*, 170 F. Supp. 3d at 183 (brackets and quotation marks omitted) (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008)).  As a result, "'even a few isolated incidents of offensive conduct do not [generally] amount to actionable harassment.'"  *Mohmand*, 2018 WL 4705800, at *6 (quoting *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002)); *accord Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 578–79 (D.C. Cir. 2013).  "This limit on hostile work environment claims avoids imposing 'a general civility code' through federal civil rights statutes and 'filter[s] out complaints attacking the ordinary tribulations of the workplace.'"  *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)).

"[N]either the D.C. Circuit nor the Supreme Court has yet [to] decide[] whether 'a hostile work environment claim can be brought under the ADEA.'"  *Id.* (quoting *Ware v. Hyatt Corp.*, 80 F. Supp. 3d 218, 227 (D.D.C. 2015)).  But, "assuming it can be, 'the same standard [as

discussed above] would apply.'" *Id.* (quoting *Ware*, 80 F. Supp. 3d at 227).  That standard is context specific:  "'In determining whether an actionable hostile work environment claim exists,' the Court must . . . 'look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).  But one thing must always be true: "[t]he employer's 'conduct must be extreme,' and must be 'both objectively and subjectively offensive,' such 'that a reasonable person would find' the conduct 'hostile or abusive.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)).

Plaintiff's allegations fall far short of this standard.  For one, Plaintiff's allegations are entirely conclusory and lacking in factual support, rendering them of little value in sustaining Plaintiff's claim.  *Iqbal*, 556 U.S. at 678.  Putting aside for a moment the allegations of discrimination and retaliation discussed above, Plaintiff repeatedly asserts that the Board created a hostile work environment but neglects to explain how.  Dkt. 20 at 3, 8 (Am. Compl. ¶¶ 9, 27–28).  So too, Plaintiff claims he was harassed, *id.* at 6–7 (Am. Compl. ¶¶ 21, 24), but he fails to recount a single statement that was uttered, a single action that was taken, or a single incident that occurred from which the Court could infer the presence of harassment.  *Id.*  These basic pleading failures foreclose Plaintiff's hostile work environment claim.  *Iqbal*, 556 U.S. at 678.

Moreover, even if the Court were to impute Plaintiff's separate allegations of discrimination and retaliation to Plaintiff's hostile work environment claim, Plaintiff's claim would still fail.  Plaintiff does not allege facts permitting a plausible inference that his "workplace [was] permeated with discriminatory intimidation, ridicule, and insult."  *Morgan*, 536 U.S. at 116 (quotation marks omitted).  Nor has Plaintiff alleged that he was subjected to

22

shocking conduct, such as "'physical assault,' 'sexual assault,' 'racially hostile graffiti that amounted to [a] death threat,' 'the use of several racial epithets and insults,' [or] 'a burning cross.'"  *Mohmand*, 2018 WL 4705800, at *7 (quoting *Ayissi-Etoh*, 712 F.3d at 579–80 (Kavanaugh, J., concurring)).  Rather, Plaintiff avers that a modest change in work responsibilities—translating the same languages in different directions for television instead of for radio—alongside his non-promotion to a higher pay grade, constituted such "abusive," "extreme," "insult[ing]," or "ridicul[ous]" actions as to sustain his hostile work-environment claim.  *Mohmand*, 2018 WL 4705800, at * 6–7.  For the reasons explained, however, those allegations are insufficient to state a hostile work environment claim.  *See Morgan*, 536 U.S. at 116; *Faragher*, 524 U.S. at 787–88.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** the Board's motion to dismiss, Dkt. 23.  A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  October 29, 2020